# In the United States Court of Federal Claims
No. 16-1276L
(June 19, 2019)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | **Motion to Disqualify Counsel; Law Firm's Concurrent Representation of Adverse Parties; Implied Waiver; Unreasonable Delay; California Rules of Professional Conduct; Fifth Amendment Takings; Water Rights.** |
| CITY OF FRESNO, et al., | * | |
| Plaintiffs, | * | |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant, | * | |
| and | * | |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, et al., and CENTRAL CALIFORNIA IRRIGATION DISTRICT, et al., | * | |
| Defendant-Intervenors. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Nancie G. Marzulla and Roger J. Marzulla, Marzulla Law, LLC, 1150 Connecticut Avenue, NW, Suite 1050, Washington, D.C. 20036, for Plaintiffs.

Jean E. Williams and Lucinda J. Bach, U.S. Department of Justice, Environment and Natural Resources Division, Post Office Box 7611, Washington, DC 20044, and Geoffrey M. Long, United States Department of Justice, Civil Division, Commercial Litigation Branch, Post Office Box 480, Washington, DC 20044, for Defendant.

Paul R. Minasian, Minasian, Meith, et al., 1681 Bird Street, P.O. Box 1679, Oroville, CA 95965, for Defendant-Intervenors, San Joaquin River Exchange Contractors Water Authority, Central California Irrigation District, Firebaugh Canal Water District, San Luis Canal Company, and Columbia Canal Company.

Daniel J. O'Hanlon, Kronick, Moskovitz, Tiedemann & Girard, 400 Capitol Mall, 27th Floor, Sacramento, CA 95814, for Defendant-Intervenor, San Luis & Delta-Mendota Water Authority.

David T. Ralston, Foley & Lardner LLP, 3000 K Street, N.W., Suite 600, Washington, DC 20007, for Defendant-Intervenors, Byron Bethany Irrigation District and Del Puerto Water District.

Jon D. Rubin, Westlands Water District, 400 Capitol Mall, 28th Floor, Sacramento, CA 95814, for Defendant-Intervenor, Westlands Water District.

Ellen L. Wehr, Grassland Water District, 200 W. Willmott Avenue, Los Banos, CA 93635, for Defendant-Intervenor, Grassland Water District.

Thomas M. Berliner, Duane Morris LLP, 1 Market, Spear Tower, Suite 2200, San Francisco, CA 94105, for Defendant-Intervenor, San Luis Water District.

Steven Stadler, James Irrigation District, 8749 – 9th Street, P.O. Box 757, San Joaquin, CA 93660, for Defendant-Intervenor, James Irrigation District.

Anthony T. Fulcher, Santa Clara Valley Water District, 5750 Almaden Expressway, San Jose, CA 95118, for Defendant-Intervenor, Santa Clara Valley Water District.

## OPINION AND ORDER

**WILLIAMS**, Senior Judge.

Plaintiffs seek compensation for a Fifth Amendment taking of their water rights in the Central Valley Project's Friant Division during the 2014 drought in California. Plaintiffs claim that the Bureau of Reclamation ("Reclamation") allocated water to the Exchange Contractors[1] in lieu of Plaintiffs and breached their water delivery contracts.[2]

This matter comes before the Court on Plaintiffs' Motion to Disqualify Paul Minasian, Esq., and the law firm of Minasian, Meith, Soares, Sexton & Cooper, LLP ("the Minasian Firm") from representing Defendant-Intervenors, the Exchange Contractors. Plaintiffs seek disqualification based upon the Minasian Firm's alleged concurrent representation of the Exchange

---

[1] The Exchange Contractors are the San Joaquin River Exchange Contractors Water Authority, the Central California Irrigation District, San Luis Canal Company, Firebaugh Canal Water District, and Columbia Canal Company.

[2] Each of the Plaintiff-Districts and the City hold a water delivery contract with the United States for a specified quantity of "Project Water stored or flowing through Millerton Lake . . . ." Second Am. Compl. Ex. 4 at 2-3, Contract Between the U.S. and City of Fresno Providing for Project Water Service from Friant Div. and Facilities Repayment, Recital 5 (Dec. 22, 2010).

2

Contractors in this matter and one Plaintiff, Exeter Irrigation District ("Exeter"), in an unrelated matter as well as the Minasian Firm's alleged prior representation of seven Plaintiffs.

Because Plaintiffs acquiesced in these alleged conflicting representations for several years, Plaintiffs waived their right to seek Mr. Minasian's disqualification at this juncture. As such, Plaintiff's Motion to Disqualify Counsel is denied.

### **Background**[3]

Paul Minasian has served as general counsel to the Exchange Contractors since approximately 1982. Minasian Decl. ¶ 3, Sept. 14, 2018. In that timespan, Mr. Minasian has represented the Exchange Contractors in approximately 20 proceedings in state and federal court on issues ranging from San Joaquin River water rights issues to the United States' failure to provide drainage facilities within the San Joaquin Valley. Id. at ¶¶ 3, 8, 17. Mr. Minasian estimates that his clients have "invested many years and hundreds of thousands of dollars in providing the opportunity for [him] to understand and research" the legal and factual history of the Central Valley Project and the Exchange Contractors' rights to San Joaquin River water under the Exchange and Purchase Contracts of 1939.[4]  Id. at ¶ 3. Christopher White, the manager for the Central California Irrigation District, testified that he has personally worked with Mr. Minasian on water rights issues since 2000, and that it would cost several hundred thousand dollars and take more than a year to prepare a new attorney "to adequately represent the Exchange Contractors" in this litigation. White Decl. ¶¶ 2, 8.

Mr. Minasian has represented the Exchange Contractors for the entirety of the dispute at the center of this litigation - - the Bureau of Reclamation's 2014 water allocation. In early 2014, Mr. Minasian represented the Exchange Contractors in discussions with representatives and attorneys from Reclamation and Plaintiffs, concerning the appropriate interpretation of the Exchange and Purchase Contracts and their effect on Reclamation's allocations. Minasian Decl. ¶ 13, Sept. 14, 2018. As the signs of drought were emerging in California in 2014, the Friant Contractors, Exchange Contractors, and Bureau of Reclamation were working together so that water allocation operations could "be carried out in a fashion that satisfied all parties and optimized water deliveries . . . ." Meith Decl. ¶ 15.

---

[3]   The background is derived from exhibits to the briefs on this motion as well as from representations of counsel. See Pls.' Mot. to Disqualify, ECF No. 87; Def.-Intervenors' Resp., ECF No. 92; Pls.' Reply, ECF No. 99; Def.-Intervenors' Suppl. Br., ECF No. 126; Pls.' Suppl. Br., ECF No. 127; Oct. 4, 2018 Conference Tr., ECF No. 115.

[4]   In 1939, a predecessor-in-interest to the Exchange Contractors, the Miller & Lux Company, owned rights to waters downstream from the then proposed site of the Friant Dam. Pursuant to the Purchase Contract, the United States Government purchased a portion of those Miller & Lux water rights. Pursuant to the Exchange Contract, the Exchange Contractors promised not to exercise the water rights they retained, and instead to allow the Government to exercise such rights so long as it provided the Exchange Contractors with "substitute water." See Exchange Contractors' Mot. to Intervene, Minasian Decl., Exs. C & D, ECF No. 25-6, 25-7.

At some point in the spring of 2014, the Friant Contractors indicated to Mr. Minasian that they intended to challenge Reclamation's allocation decision and take a position adverse to that of the Exchange Contractors. Minasian Decl. ¶¶ 12-13, Sept. 14, 2018. Upon learning of Plaintiffs' intention to sue the Secretary of Interior in District Court in the spring of 2014, Mr. Minasian notified the Friant Contractors' general counsel, Ms. Jennifer Buckman, and their outside counsel, Farella Braun + Martel LLP, that he would be filing a motion to intervene on behalf of the Exchange Contractors and provided a copy of his proposed motion. Id. at ¶ 12.

As contemplated, the Plaintiff-Districts (and the city of Fresno), as well as the Friant Water Authority, filed suit on May 20, 2014, against the Secretary of Interior in the Eastern District of California concerning Reclamation's failure to deliver Friant Division water to Plaintiff-Districts in early 2014, claiming a breach of contract and taking. Friant Water Auth. v. Jewell, No. 1:14-CV-000765, 2014 U.S. Dist. LEXIS 166399, at *1 n.1, 16-18 (E.D. Cal. Dec. 1, 2014).[5] Two days later, Mr. Minasian on behalf of the Exchange Contractors, filed a motion to intervene in that matter, along with a proposed complaint in intervention seeking judgment that the "Exchange Contractors had a first right and priority to receive from the facilities and rights to water available to [] Reclamation in any year . . . in order to satisfy the requirements of the Exchange Contract and duties provided in the Purchase Contract." Friant Water Auth. v. Jewell, No. 1:14-CV-000765, 2014 U.S. Dist. LEXIS 72152, at *9 (E.D. Cal. May 27, 2014) (quoting the Exchange Contractors' proposed complaint in intervention).

The District Court determined that, despite Plaintiffs' framing their claims as breaches of contract, the claims were "at their cores, statutory in nature" and fell within the District Court's jurisdiction under the Administrative Procedure Act. The Court struck prayers for damages associated with these breach claims. Friant Water Auth., 2014 U.S. Dist. LEXIS 166399, at *38-39. The District Court dismissed the takings claim for lack of jurisdiction and denied a motion to transfer, finding the Friant Contractors' takings claim was frivolous as it was premised on the allegation that Reclamation acted unlawfully, and takings claims assume that the underlying governmental action was lawful. Id. at *38 (citing Lion Raisins Inc. v. United States, 416 F.3d 1356, 1370 (Fed. Cir. 2005)). On December 29, 2014, the parties stipulated to a voluntary dismissal without prejudice of all Plaintiffs' claims, and the District Court entered a dismissal order on January 6, 2015. After the District Court dismissed the case, Mr. Minasian participated in meetings in 2015, with representatives of the Friant Contractors and Reclamation in an effort to settle the dispute. Minasian Decl. ¶¶ 14, 16-17, Sept. 14, 2018.

---

[5] It appears that every Plaintiff-District (including the city of Fresno) in this litigation was a plaintiff in the 2014 litigation in the Eastern District of California. Additionally, the Friant Water Authority, a joint powers authority at the time comprised of all 17 Plaintiff-Districts (and the city of Fresno) and six other water agencies, was a plaintiff in the 2014 litigation. Friant Water Auth., 2014 U.S. Dist. LEXIS 166399, at *1 n.1. Also named as defendants in the May 2014 District Court complaint were the United States Department of Interior, the Bureau of Reclamation, various federal officers, and two California water agencies, Grassland Water District and Grassland Resource Conservation District. Id. The Grassland Water District is also a Defendant-Intervenor in the instant action.

On October 5, 2016, Plaintiffs filed the instant action alleging that Reclamation:

> appropriated all of the water of the Friant Division of the Central Valley Project to satisfy what it determined to be a contractual requirement to provide this water as substitute water under a 1939 [Exchange] Contract . . . to a group of water users referred to as the Exchange Contractors, and refused to deliver this water to Plaintiffs for delivery to their landowners and water users who are the beneficial owners of the water right, despite Plaintiffs' demands.

Compl. ¶ 27; see also Second Am. Compl. ¶ 27.

The Exchange Contractors, still represented by Mr. Minasian, moved to intervene in this action on May 12, 2017. In their intervention motion, the Exchange Contractors challenged the validity of Plaintiffs' claimed property rights, alleging that in "a real sense, the waters and water rights to San Joaquin River flows delivered to the Exchange Contractors in 2014 which are the basis of Plaintiffs' complaint were, in fact, the property rights of the Exchange Contractors - - not the United States or the Friant Contractors." Mot. to Intervene 2, ECF No. 25. On May 31, 2018, this Court ordered Plaintiffs to show cause as to (1) why the water rights at issue were not exclusively derived from contract as a matter of law and (2) what, if any, property rights exist independently of contractual rights. See May 31, 2018 Order, ECF No. 76.

On July 19, 2018, fifteen months after Mr. Minasian filed the intervention motion on the Exchange Contractors' behalf and in the midst of show cause briefing, Plaintiffs' counsel sent a letter to Mr. Minasian, demanding that he withdraw from the case. See Pls.' Mot. to Disqualify Ex. 2. A month later, on August 20, 2018, Mr. Tom Weddle, General Manager of Plaintiff Exeter, via letter, requested Mr. Minasian to withdraw from representing the Exchange Contractors. See id. at Ex. 3.

Mr. Weddle's August 20 letter states:

> We are aware you represent the San Joaquin River Exchange Contractors, who seek to intervene as Defendants in this case. Exeter Irrigation District is a current client of your firm and a Plaintiff in this litigation, and the Exchange Contractors have positioned themselves in direct opposition to the claims we present for review. We therefore ask that you and your firm withdraw from representing the Exchange Contractors in this matter.
>
> Your continued representation of the Exchange Contractors in this litigation is unacceptable to Exeter and its landowners and water users. As set forth in your motion to intervene and supporting materials, the Exchange Contractors have and will continue to take legal positions that are directly adverse to Exeter. That the Exchange Contractors are intervening on the side of the Defendant, the United States, establishes that a concurrent conflict of interest exists between Exeter and the Exchange Contractors. Exeter has not and will not provide written informed consent for you to represent the Exchange Contractors in this matter.

> If you continue to do so, Exeter and the other Plaintiffs in this case will be forced to bring this matter to the Court of Federal Claims' attention.

Id. at 1-2. Mr. Minasian did not receive Mr. Weddle's August 20 letter via mail and did not see the letter until the instant disqualification motion was filed and the letter was attached as an exhibit. Minasian Suppl. Decl. ¶ 2, Nov. 30, 2018, ECF No. 126-1. Plaintiffs filed their disqualification motion on August 31, 2018, in conjunction with their response to the show cause order.[6]

Plaintiffs argue that Mr. Minasian should be disqualified from representing the Exchange Contractors for three reasons:

(1) The Minasian Firm represents one Plaintiff, Exeter, in other unrelated litigation while concurrently representing Defendant-Intervenors with adverse interests in this case.

(2) Seven of the Plaintiff-Districts are former clients of the Minasian Firm, as they were represented by Mr. Minasian in 2014, and he is presumed to have been exposed to confidential information.

(3) Mr. Minasian is a necessary witness in the case, as he was an active participant in the 2014 discussions with Reclamation regarding the appropriate allocation of water in the Friant Division.

Upon review of the parties' positions on the motion to disqualify, the Court ordered supplemental briefing on two issues: (1) whether under the ABA Model Rules of Professional Conduct and California law,[7] there is an automatic bar to the Minasian Firm's concurrent representation and (2) whether, as argued by the Exchange Contractors, Plaintiffs waived their right to challenge the Minasian Firm's participation in the case by unreasonably delaying their request for disqualification. Oct. 4, 2018 Conference Tr. 26, 34, ECF No. 115.

## Discussion

Disqualification of counsel is an extreme measure. Tannahill v. United States, 25 Cl. Ct. 149, 164 (1992). Though courts have broad discretion to order attorney disqualification, such an order is considered "drastic [and] perhaps draconian" and should only be granted when "absolutely necessary." Id. (citing Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1577 (Fed. Cir. 1984)). Disqualification motions should be viewed with "extreme caution" because parties

---

[6] On December 18, 2018, Plaintiffs filed their Second Amended Complaint adding the claim that Reclamation breached its water supply contracts with each Plaintiff-District and the city of Fresno, when it failed to make Friant Division water available to Plaintiffs and instead delivered that water to the Exchange Contractors. Second Am. Compl. ¶ 46.

[7] On September 26, 2018, the California Supreme Court issued an order approving amendments to the California Rules of Professional Conduct, which went into effect November 1, 2018. Cal. Rules of Prof'l Conduct r. 1 (State Bar of Cal. 2018).

can employ them to harass opposing counsel or to gain a litigation advantage. Panduit, 744 F.2d at 1576-77 (quoting Freeman v. Chicago Musical Instrument Company, 689 F.2d 715, 722 (7th Cir. 1982) and applying Seventh Circuit law) (warning that "judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. The opposite effects are just as likely - - encouragement of vexatious tactics and increased cynicism by the public"); Tannahill, 25 Cl. Ct. at 164; see also People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc. (SpeeDee Oil), 20 Cal. 4th 1135, 1145 (Cal. 1999) ("Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion.").

### Plaintiffs Waived their Right to Seek the Minasian Firm's Disqualification by Knowingly Acquiescing in its Representation of the Exchange Contractors for Several Years

Two of the grounds for disqualification that Plaintiffs raise, center on the Minasian Firm's alleged conflicts of interest. First, Plaintiffs allege that, while representing the Exchange Contractors in this litigation, the Minasian Firm simultaneously represents one Plaintiff, Exeter Irrigation District, in other unrelated matters. Weddle Decl. ¶¶ 1-2.

#### Alleged Concurrent Representation of Exeter

Mr. Weddle testified that the Minasian Firm has been providing "general counsel services" to Exeter at least since he began serving in his position almost eight years ago. Weddle Decl. ¶¶ 2-4. According to Mr. Weddle, these services cover "a variety of procedural requirements and legal compliance issues, including but not limited to: water rights and water supply contract negotiations and implementation issues, compliance with public meeting laws, public records laws, taxation and assessment or fee collection issues, employment and labor laws, and public premises liability." Id. at ¶ 3. Plaintiffs identify Dustin Cooper and Jackson Minasian as two Minasian Firm attorneys who currently represent Exeter. Id. at ¶ 4.[8]

In addition to Mr. Weddle's declaration, Plaintiffs rely on an annual audit letter dated July 27, 2018, sent by Andrew McClure, a partner at the Minasian Firm, to Exeter's accountant in connection with the accountant's examination of Exeter's financial records. Pls.' Reply Ex. 2 at 1. In this letter, Mr. McClure stated that the Minasian Firm "provides legal services to Exeter Irrigation District when requested." Id. Mr. McClure then summarized three cases in which the Minasian Firm provided representation to Exeter as of July 27, 2018. Id. at 1-2. The first case, NRDC v. Rogers, involves a dispute over the implementation of a settlement calling for a reduction in the quantity of water delivered to the Friant Districts under their Reclamation contracts, so that Reclamation has sufficient water to propagate salmon populations in the San Joaquin River as

---

[8] The Exchange Contractors dispute that Jackson Minasian has represented Exeter. ECF No. 115, Oct. 4, 2018 Conference Tr. 24 (Jackson Minasian stating that "he has talked to Mr. Weddle before," but that Exeter "is a client of a partner - - one of the other partners handles [Mr. Weddle's] inquiries").

7

required by the Endangered Species Act.  Id. at 1; Oct. 4, 2018 Conference Tr. 7-8.  In the second case, Exeter is party to proceedings regarding the establishment of water quality standards in the San Francisco Bay Delta, which, according to Mr. McClure's letter, could potentially lessen the quantity of water that Exeter receives pursuant to its Reclamation contract.  Pls.' Reply Ex. 2 at 1; Oct. 4, 2018 Conference Tr. 8-9.  Third, on behalf of Exeter, the Minasian Firm is monitoring legal developments concerning state groundwater regulations in anticipation of implementation of those regulations and regulatory proceedings.  Plaintiffs contend that the Minasian Firm did not obtain a waiver of this conflict of interest from Exeter or Exeter's consent to intervene in this case. Weddle Decl. ¶ 4.

     The Exchange Contractors do not dispute that the Minasian Firm failed to obtain a waiver or consent.  Nor do the Exchange Contractors dispute the general allegation that the Firm currently provides legal advice to Exeter.  See Minasian November 6, 2018 Letter at 5, ECF No. 127-3 (stating that one Minasian firm attorney, Dustin Cooper, has "apparently performed some work . . . [that] is not related to the events or issues before the Court of Claims" and that Paul Minasian's and Mr. Cooper's representations "were generally segregated").  Instead, the Exchange Contractors argue that "[n]o attorneys . . . currently represent any of the Plaintiffs on the issues before the Court of Claim[s] or water rights to San Joaquin River flows." Def.-Intervenors' Resp. 15; see Def.-Intervenors' Suppl. Br. 14; Oct. 4, 2018 Conference Tr. 16 (Mr. Minasian acknowledging that "other members of the firm are providing general work and answering . . . questions on a current basis, which were subject to the audit," naming Andrew McClure and Dustin Cooper).

     Rule 1.7 of the California Rules of Professional Conduct provides that a "lawyer shall not, without informed written consent from each client . . . , represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. Rules of Prof'l Conduct r. 1.7 (State Bar of Cal. 2018).  Plaintiffs argue that, under California law, with respect to concurrent representation, "in all but a few instances, the rule of disqualification . . . is a per se or automatic one" even if Mr. Cooper represents Exeter in totally unrelated matters.  See Pls.' Reply at 6 (quoting Flatt v. Superior Court, 9 Cal. 4th 275, 284 (Cal. 1994)).  However, an ethical violation does not automatically warrant disqualification.  Tannahill, 25 Cl. Ct. at 164.  Rather, the court must examine the facts and balance the interests of the parties and "the public's interest in the scrupulous administration of justice" to determine whether counsel's representation would tend to taint the litigation.  Id; see Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1983); Wyeth v. Abbott Labs., 692 F. Supp. 2d 453, 457 (D.N.J. 2010) (stating the court must "carefully examine the totality of the circumstances, taking a balanced approach that includes evaluating the impact, nature, and degree of a conflict"); SpeeDee Oil, 20 Cal. 4th at 1144 (stating that "judges must examine these motions carefully to ensure that literalism does not deny the parties substantial justice").

     As explained below, this Court concludes that Plaintiffs waived their rights to seek disqualification in this action on the ground that the Minasian Firm's concurrent representation of the Exchange Contractors and Exeter constitutes a violation of the ABA and California rules.

**Alleged Former Representation of Seven Plaintiffs**

Second, Plaintiffs argue that Mr. Minasian's disqualification is required due to a conflict of interest arising from the Minasian Firm's former representation of seven Plaintiffs in 2014, in a matter that is the same or substantially related to this case, in violation of ABA Model Rule 1.9(a). Pls.' Reply 11 & n.25 (citing Kirk v. First Am. Title Ins. Co., 108 Cal. Rptr. 3d 620, 637-38 (Cal. Ct. App. 2010)); see also Cal. Rules of Prof'l Conduct, r. 1.9(a) (State Bar of Cal. 2018). Model Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Model Rules of Prof'l Conduct r. 1.9(a) (Am. Bar Ass'n 2016). Plaintiffs claim that, before the Friant Contractors commenced the 2014 District Court litigation, Mr. Minasian represented seven of those Friant Contractors in 2014, regarding the same Reclamation allocation decision and contractual arrangements central to the instant litigation, and that Mr. Minasian's current representation of the Exchange Contractors is materially adverse to the interests of those allegedly former clients.

Plaintiffs have not proffered any evidence that comes close to establishing a violation on this ground. Plaintiffs submitted no declarations or other evidence from Friant Contractor representatives suggesting that Mr. Minasian provided such legal services in 2014, or at any other time. See Pls.' Mot. to Disqualify; Pls.' Reply; Pls.' Suppl. Br. Instead, Plaintiffs rely solely on a May 19, 2014 letter from Mr. Minasian to the managers of these seven plaintiffs in which Mr. Minasian "analyzes and explains . . . the provisions of the Exchange Contract, Purchase Contract, and Mammoth Pool agreement, including how they applied to Reclamation's 2014 Friant Division operations." Pls.' Mot. to Disqualify 14, Ex. 5. This letter was not sent by Mr. Minasian to Plaintiffs in the context of an attorney-client relationship with any Plaintiff. Rather, according to Mr. Minasian and Christopher White, the manager for Intervenor Central California Irrigation District, the Exchange Contractors instructed Mr. Minasian to draft this letter, which, though addressed to "Friant-Kern Contractors Managers," was intended for the Exchange Contractors' own use "to further [their] efforts to explain to Friant Contractor Representatives why their assertions about the Exchange Contractors' rights to [San Joaquin River] flows were wrong." White Decl. ¶ 5; Minasian Decl. ¶ 9, Sept. 14, 2018. Mr. Minasian forwarded the letter on July 8, 2014, to a former attorney for three Friant Contractors at the request of his clients, the Exchange Contractors. See Pls.' Reply, Mauritson Decl., Ex. A (July 3, 2014 email from Steve Chedester, Executive Director of the San Joaquin River Exchange Contractors Water Authority, directing Paul Minasian to send the May 19, 2014 draft letter to a former attorney for three Plaintiffs). Plaintiffs have failed to establish, based upon this May 19, 2014 letter, that Mr. Minasian represented any Plaintiff in 2014.

As a second basis for their successive representation argument, Plaintiffs contend that the Minasian Firm represented seven Plaintiffs regarding the water allocation decisions in 2014, based solely upon a former Minasian partner, Mr. Jeffrey Meith's January 14, 2014 letter to these

Plaintiffs.[9]  Plaintiffs claim that this January 14, 2014 letter is evidence of the "the Minasian Firm's engagement" in reviewing the contracts that are "at issue in this case."  Pls.' Mot. to Disqualify 11.  However, Mr. Meith wrote this letter in response to an inquiry from the seven Plaintiffs as to whether he could work with the Friant Water Authority's general counsel, Ms. Jennifer Buckman, in a <u>collaborative effort</u> to review the Exchange Contract and evaluate "strategies, consistent with [the Exchange Contract], <u>which could be advantageous and/agreeable to the Friant Unit contractors and the Exchange Contractors</u>."  Meith Decl. ¶ 12, Ex. 1 at 1 (emphasis added).

This January 14, 2014 letter did not give rise to an adverse representation, as these Plaintiffs had asked Mr. Meith to work with their general counsel to evaluate mutually agreeable strategies.  Mr. Meith stated in the January 14 letter that he:

> certainly could not engage in strategic discussions that would be adverse to the Exchange Contractors nor for that matter, could [he] engage in discussions with the Exchange Contractors on matters that are adverse to the Friant Contractors. . . However, the foregoing being said, as long as the goal is to try to do what can be done, under current drought circumstances, to optimize available supply to the maximum extent feasible, <u>consistent with the terms and conditions of the Exchange Contract</u>, we do not see any conflicting situations.
>
> [I]f issues arose wherein there could be a conflict, we would either have to withdraw from participation and/or receive waivers of any conflicts by both the Exchange Contractors and the Friant Unit.

<u>Id.</u> Ex. 1 at 3 (emphasis in original).  Mr. Meith closed the letter by stating he would "await further direction" from the Friant Contractors' general counsel, Ms. Buckman.  However, as Mr. Meith testified, no further direction ever came.  <u>Id.</u> at ¶ 14 (stating that to the best of his recollection, "the Friant Districts did not respond to his January 14, 2014 letter with any direction to review and summarize the operative provisions of those contracts," and he had no recollection of "subsequently rendering legal advice to the Friant Districts on these issues").  Plaintiffs offered no evidence disputing Mr. Meith's testimony. The record establishes that Mr. Meith's January 2014 letter and related discussions never resulted in Mr. Meith representing the Friant Contractors in an adverse matter.[10]

A few months later when he realized that the Friant Contractors could take a position adverse to the Exchange Contractors, Mr. Meith recused himself from dealing with those

---

[9]   Mr. Meith retired from full-time law practice on December 31, 2013, and has been winding down his business since.  Meith Decl. ¶ 5.

[10]   The Minasian Firm's billing records support this conclusion.  Mr. Meith billed 4.5 hours in January 2014, for reviewing and summarizing the agreements, drafting the January 14, 2014 letter, and discussing water transfers.  <u>See</u> Pls.' Mot. to Disqualify Ex. 6 at 1. In April and May 2014, Mr. Meith billed four hours for drafting a memo to Friant Water Authority's general counsel, Ms. Buckman and for correspondence regarding a potential Court of Claims action and a conflict waiver for Farella Braun & Martel.  <u>See id.</u> at 3.

Plaintiffs' efforts to bring claims against Reclamation. Mr. Meith testified that, in a May 2014 conference call between Friant Contractor attorneys to discuss potential claims against the Bureau of Reclamation, he was told by one conferee that the Friant Contractors had "begun to evaluate positions that created a potential conflict with the Exchange Contractors." Id. at ¶ 19. Mr. Meith immediately ceased participating in that conference call, expressly noting that "his firm had a conflict in that it also represented the Exchange Contractors." Id. at ¶ 18. On May 19, 2014, Mr. Meith recused himself via telephone and via email from representing these seven Plaintiffs with respect to their "proposed efforts, led by the Friant Water Authority and its counsel Ms. Buckman to file a claim against the Bureau of Reclamation." Id. ¶¶ 17-21, Ex. 2, 3; see also id. ¶ 22 (stating that counsel for the Friant Water Authority and the other Friant Contractors acknowledged his recusal and were cooperative).

**Waiver**

Even assuming that the Minasian Firm's current representation of the Exchange Contractors and Exeter and these prior dealings between the Minasian Firm and some Plaintiffs violate the ABA or California Rules of Professional Conduct, Plaintiffs waived their right to seek disqualification, because they have known about these alleged conflicts of interest since May 2014. Specifically, almost four years before filing this motion for disqualification, these Plaintiffs sued the Secretary of Interior in the United States District Court for the Eastern District of California, challenging the same conduct at issue here - - Reclamation's failure to deliver water to them in 2014 - - and never complained about either Mr. Minasian's representation of the Exchange Contractors as intervenors in that action or his continuing negotiations on the Exchange Contractors' behalf after that suit.

Plaintiffs do not dispute that, by May 22, 2014, they knew about the conflicts of interest that they now allege as grounds for Mr. Minasian's disqualification, i.e. the current, continuing representation of Exeter by Mr. Minasian's law partner Dustin Cooper and the alleged former representation of seven Plaintiffs by Mr. Minasian. Friant Water Auth. v. Jewell, No. 1:14-CV-000765, 2014 U.S. Dist. LEXIS 72152, at *9 (E.D. Cal. May 27, 2014). Plaintiffs also knew about what they claim is a former representation involving Mr. Meith at least as early as May 19, 2014, when Mr. Meith recused himself from representing these seven Plaintiffs with respect to claims against the Bureau of Reclamation. Meith Decl. ¶ 19.

"It is well settled that a . . . client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." Trust Corp. of Mont. v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983); Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1115 (D.N.J. 1993) (stating that waiver is a "valid basis for the denial of a motion to disqualify"); Antelope Valley Groundwater Cases, 30 Cal. App. 5th 602, 625 (2018); SpeeDee Oil, 20 Cal. 4th at 1145 n.2 (stating that courts may consider whether "despite knowing the pertinent facts, a party unreasonably delayed seeking disqualification and so caused its opponent significant prejudice").

In determining whether a movant's delay in seeking disqualification is sufficient to find waiver, courts generally consider:

>(1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the nonmoving party.

Alexander, 822 F. Supp. at 1115; Doe v. City of Memphis, No. 2:13-cv-03002-JTF, 2015 U.S. Dist. LEXIS 87596, *17-18 (W.D. Tenn. Apr. 8, 2015); Cont'l Holdings v. United States Can Co., No. 95 C 5743, 1996 U.S. Dist. LEXIS 9416, *3 (N.D. Ill. July 2, 1996); accord Bayside Fed. Sav. & Loan Ass'n v. United States, 57 Fed. Cl. 18, 22 (2003) (in denying a disqualification motion, considering, among other factors, that the defendant waited six years into the litigation to move for disqualification of an attorney).

Here, Plaintiffs' knowledge of the Minasian Firm's alleged conflicting representations and their almost four-year delay in seeking disqualification militates in favor of finding waiver. Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200 (E.D. Pa. 1992) (denying motion to disqualify filed two years into the case because the movant knew of the alleged conflict when the suit commenced); Cont'l Holdings, 1996 U.S. Dist. LEXIS 9416, at *3. The instant dispute harks back to 2014, when Plaintiffs filed their District Court complaint challenging Reclamation's failure to deliver Friant Division water to them and Mr. Minasian represented the Exchange Contractors who sought judgment that the Exchange Contractors had priority "rights to water available to [] Reclamation in any year . . . in order to satisfy the requirements of the Exchange Contract and duties provided in the Purchase Contract." Friant Water Auth., 2014 U.S. Dist. LEXIS 72152, at *9 (quoting the Exchange Contractors' proposed complaint in intervention). That litigation lasted seven months before the complaint was voluntarily dismissed without prejudice and was followed by settlement efforts in 2015, in which Mr. Minasian was actively involved. Courts have found waiver based on delays shorter than Plaintiffs' four-year delay in seeking Mr. Minasian's disqualification. See Alexander, 822 F. Supp. at 1116 (citing seven cases where delays of less than four years warranted a finding of waiver); see also Liberty Nat'l Enters., L.P., 194 Cal. App. 4th at 848 ("The timing . . . reflects a lack of concern on [moving party's] part over the alleged breach of confidentiality").

Plaintiffs' lack of a plausible explanation for their delay in seeking disqualification and unexplained change of position further support a finding of waiver. Alexander, 822 F. Supp. at 1115-16. Exeter, the only Plaintiff to contact the Minasian Firm directly about the alleged conflicts of interests, did not address why it suddenly decided to object to a concurrent representation in which it had acquiesced for years. Exeter's August 20, 2018 letter requesting Mr. Minasian's withdrawal is bereft of any factual predicate for the request and is silent as to the rationale for Exeter's change of heart about Mr. Minasian's representation. See Chem. Waste Mgmt. v. Sims, 875 F. Supp. 501, 505 (N.D. Ill. 1995) (finding waiver in part because Plaintiffs' 25-month delay and lack of justification would be "reasonably perceived as an admission that the principles of confidentiality and conflict of interest are not significantly related to the procedural integrity of [its] case"); Antelope Valley Groundwater Cases, 30 Cal. App. 5th at 625 (in finding a waiver, the court emphasized that the moving party made no effort to carry its burden of showing justification for the delay).

In their September 21, 2018 reply, Plaintiffs suggest they did not move to disqualify Mr. Minasian in the 2014 litigation because that litigation involved Administrative Procedure Act ("APA") issues. This attempt at distinguishing the earlier litigation is untenable. The APA legal theory in that case was based on the same facts and conduct now challenged before this Court. Moreover, the APA theory was not the legal theory offered by Plaintiffs, as the District Court "interpreted the breach of contract claims as arising under the APA" and assumed "jurisdiction over them." 2014 U.S. Dist. LEXIS 166399, at *32.

So too, the fact that Plaintiffs were represented by counsel throughout this delay is a factor supporting a finding of waiver. Alexander, 822 F. Supp. at 1115.[11]

In assessing potential prejudice that would inure to the nonmoving party by virtue of disqualification, courts consider the attorney's involvement with the case and familiarity with the issues. See Alexander, 822 F. Supp. at 1117; Liberty Nat'l Enters., L.P., 194 Cal. App. 4th at 848. Here, the Exchange Contractors have demonstrated that they would be severely prejudiced if Mr. Minasian were disqualified and they lost their counsel of 36 years. According to Christopher White, the manager for the Central California Irrigation District, the cost to replace Paul Minasian's expertise in California water law and his legal and factual knowledge regarding the Exchange Contractors' water rights "would exceed several hundred thousand Dollars and take in excess of one year." White Decl. ¶ 8; Minasian Decl. ¶¶14-16, Sept. 14, 2018. Had Plaintiffs timely moved to disqualify Mr. Minasian in 2014, the Exchange Contractors may not have spent the last four years investing resources in Mr. Minasian's representation of them in the 2014 District Court litigation, the mediation efforts in 2015, and intervention in this matter. Id. at ¶ 18; see Alexander, 822 F. Supp. at 1117 (noting significant prejudice if attorney were disqualified because attorney "handled all aspects of the case," "engaged in substantial pretrial preparation," and had a "singular familiarity" with the evidence and factual and legal issues); Liberty Nat'l Enters., L.P., 194 Cal. App. 4th at 848 (denying a motion to disqualify recognizing that party opposing the motion stood to lose its attorney of several years, who "filed and developed the case" and had "gained mastery of [the] case as it was being developed for the two years that preceded the trial").

In sum, based upon Plaintiffs' acquiescence in these alleged conflicts for almost four years, Plaintiffs' lack of justification for their delay in seeking Mr. Minasian's disqualification, and the significant prejudice to the Exchange Contractors that would result, the Court concludes that Plaintiffs have waived their right to seek disqualification.

**Mr. Minasian as a Necessary Witness**

Finally, Plaintiff contend that Mr. Minasian must be disqualified because he is a necessary witness. Plaintiffs allege, without factual support, that Mr. Minasian must testify to "hydrologic facts and legal arguments he offered to Reclamation, resulting in Reclamation's ultimate decision to deny water to Plaintiffs." Pls.' Mot. to Disqualify 15. Plaintiffs cite ABA Model Rule 3.7, which provides:

---

[11]     Plaintiffs were represented by the law firm, Farella, Braun, and Martel in 2014, and were still represented by counsel in 2015. Minasian Decl. ¶¶ 12-14, Sept. 14, 2018.

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Model Rules of Prof'l Conduct r. 3.7 (Am. Bar Ass'n 2016).

Plaintiffs have not suggested why the hydrological facts and legal arguments that Mr. Minasian presented to Reclamation are relevant or why this information cannot be obtained via other channels. Cf. Sparton Corp. v. United States, 44 Fed. Cl. 557, 563 (1999) (holding that a party may only depose opposing counsel if, among other things, there are no other means to obtain the information) (citing Shelton v. Am. Motors Corp., 805 F.3d 1323, 1327 (8th Cir. 1986). Plaintiffs have not established that Mr. Minasian is a necessary witness in this litigation.

## Conclusion

Plaintiffs' motion to disqualify Paul Minasian and the Minasian Firm is **DENIED**.

    s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**