# In the United States Court of Federal Claims

|  |  |
|---|---|
| CITY OF FRESNO, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 16-1276C |
| THE UNITED STATES OF AMERICA, | ) (Filed: February 1, 2021) |
| Defendant, | ) |
| and | ) |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*, and CENTRAL CALIFORNIA IRRIGATION DISTRICT, *et al.* | ) |
| Defendant-Intervenors. | ) |

**OPINION AND ORDER**

**KAPLAN, Judge.**

      Plaintiffs in this action include the City of Fresno, California, and seventeen irrigation districts in California that have entered contracts with the Bureau of Reclamation to receive water supplied by the Friant Division of the Central Valley Project ("CVP") (hereinafter "the Plaintiffs"). They allege that in 2014, in the wake of water shortages caused by a severe drought, Reclamation breached certain water supply contracts between itself and the Plaintiffs when it "appropriated all of the water of the Friant Division of the [CVP] to satisfy what it determined to be a contractual requirement to provide this water as substitute water under a 1939 Contract . . . to a group of water users referred to as the Exchange Contractors." Pl.'s 2d Am. Compl. ¶ 32, ECF No. 128-1.

      Presently before the Court are 1) a motion to compel Plaintiffs to provide additional responses to the first set of interrogatories served by defendant-intervenors, the Exchange Contractors ("the Intervenors"),[1] see Intervenors' Mot. to Compel, ECF No. 182; and 2)

---

[1] As discussed in this Court's March 25, 2020 Opinion ruling on the government's and the intervenors' motions to dismiss, ECF No. 163 at 3 n.3, there are two sets of defendant-

Plaintiffs' Motion to Compel Defendant-Intervenors, the Exchange Contractors, to Produce Daniel Steiner for Deposition under Rule 30(b)(1) ("Pl.'s Mot. to Compel"), ECF No. 189. For the reasons set forth below, Intervenors' motion to compel is **GRANTED-IN-PART** and **DENIED-IN-PART.** Plaintiffs' motion to compel the deposition of Mr. Steiner is **GRANTED**.

## DISCUSSION

### I.      Intervenors' Motion to Compel

As noted, the Exchange-Contractor Intervenors have filed a motion to compel Plaintiffs to respond to the set of fifty interrogatories that Intervenors served on them on October 21, 2020. Intervenors' Mot. to Compel. Intervenors complain that Plaintiffs failed to respond to fifteen of the first twenty-five interrogatories and/or "evaded response by mischaracterizing the information sought under the interrogatory." Id. at 2. In addition, Intervenors challenge Plaintiffs' assertion that they have no duty to respond at all to Interrogatory Nos. 26–50 because Rule 33 of the Rules of the Court of Federal Claims ("RCFC") provides that "a party may serve on any other party no more than 25 written interrogatories." See Intervenors' Reply at 6, ECF No. 184.

Before turning to the Motion to Compel, the Court observes that it found a number of Intervenors' first twenty-five interrogatories difficult to understand as written. Further, the explanations of the interrogatories that Intervenors' counsel provided Plaintiffs' counsel in a December 4, 2020 letter were not especially helpful. See Intervenors' Mot. to Compel Ex. 2. Nonetheless, for the reasons set forth below, the Court will grant Intervenors' motions to compel additional responses to Interrogatory Nos. 8, 9, 10, and 24. While those interrogatories were also not a model of clarity, the Court has concluded that they merit more fulsome responses than Plaintiffs have so far provided. Otherwise, Intervenors' motion to compel is denied.

#### A.      Motion to Compel Additional Responses to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 17, 18, 19, and 24

The Rules of the Court of Federal Claims provide that parties may serve written interrogatories that "relate to any matter that may be inquired into under RCFC 26(b)." RCFC 33(a)(2). Rule 26(b), in turn, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." RCFC 26(b)(1).

The first twenty-five interrogatories that Intervenors served on Plaintiffs are so-called contention interrogatories. In general, the purpose of contention interrogatories is to ascertain the theories underlying a party's case and the facts that support those theories. Exxon Research & Eng'g Co. v. United States, 44 Fed. Cl. 597, 601 (1999); see also Ian D. Johnston & Robert G.

---

intervenors in this case: 1) San Luis & Delta-Mendota Water Authority along with its member districts (the "District Intervenors") and 2) Central California Irrigation District, San Luis Canal Company, Firebaugh Canal Water District, Columbia Canal Company, and the San Joaquin River Exchange Contractors Water Authority (the "Exchange Contractor Intervenors").

Johnston, Contention Interrogatories in Federal Court, 148 F.R.D. 441, 442 (1993) ("[C]ontention interrogatories seek to discover the factual basis for the allegations raised in the complaint, answer or counterclaim."). A party may be precluded from relying on theories that it disavows in its responses to contention interrogatories. See, e.g., Dairyland Power Co-op. v. United States, No. 04-106 C, 2008 WL 5122339, at *7 (Fed. Cl. June 20, 2008). Therefore, it is especially important that such interrogatories be "intelligible, specific and carefully tailored for each case." Contention Interrogatories in Federal Court, 148 F.R.D. at 446–47.

The party on whom an interrogatory is served "must provide true, explicit, responsive, complete, and candid answers" which should be provided "directly and without evasion in accordance with information that the answering party possesses after due inquiry." Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 132 (2009) (citations omitted). However, a party is "under no obligation to decipher" vague or incomprehensible interrogatories. Rucker v. Wabash R. Co., 418 F.2d 146, 154 (7th Cir. 1969). Indeed, as one district court judge put it, "vague and argumentative questions usually contain a built-in penalty." Pressley v. Boehlke, 33 F.R.D. 316, 317 (W.D.N.C. 1963). For while "[e]vasive or cryptic answers are ordinarily insufficient," "a cryptic question invites an inscrutable answer." Id.

### 1.    Interrogatory Nos. 1–6

Interrogatory No. 1 reads as follows:

> Do you contend that any water released or delivered by the United States to the Exchange Contractors in 2014 from the San Joaquin River flows or from stored water of the San Joaquin River was water that the Exchange Contractors rights to water, preexisting the receipt by the United States of the rights granted under Decision 935 of the SWRCB, did not attach to?

Pl.'s Resp. to Intervenors' Mot. to Compel ("Pl.'s Resp.") Ex. 1, at 1–2, ECF No. 183-1. Interrogatory No. 4 appears to cover the same topic. It states:

> Do you contend that in 2014 the United States possessed rights to divert and store San Joaquin River water with priority ahead of and senior to any rights to water of the Exchange Contractors under California law which were granted to the United States by Decision 935 of the State Water Resources Control Board and exercised by the United States to make the deliveries of water to the Exchange Contractors described in your answer to Interrogatory Nos. 1 and/or 2?

Id. at 4.

Plaintiffs interpreted Interrogatory Nos. 1 and 4 as requests that they identify what they claimed were the sources of Reclamation's rights to divert and store San Joaquin River water in 2014. Id. at 2, 4. In response, Plaintiffs explain that it was their contention that Reclamation's rights to use San Joaquin River water were based on the Second Amended Contract for Exchange of Waters and not on any state-granted water rights. Id. In their response to the Motion to Compel, Plaintiffs clarify that they interpreted the interrogatory to ask whether the Intervenors

3

were entitled as a matter of state water rights law to the water that Reclamation delivered to them in 2014, and that their intent was to answer that question "no." Pl.'s Resp. at 8; see also id. at 10 (clarifying Plaintiffs' answer to Interrogatory No. 4).

An answer stating that the responding party does not make the contention presented in a contention interrogatory is a sufficient answer to that interrogatory. Roberts v. Heim, 130 F.R.D. 424, 426 (N.D. Cal. 1989) ("As Plaintiffs apparently make no such claim, it is not an issue in this lawsuit and Defendants have no need for this answer."). Further, the Court is satisfied that Plaintiffs made a good faith attempt to respond to Interrogatory Nos. 1 and 4, as best those interrogatories could be understood. The Court cannot require Plaintiffs to embrace or reject a contention whose meaning is unclear. It therefore rejects Intervenors' argument that Plaintiffs' responses to Interrogatory Nos. 1 and 4 are inadequate on the grounds that they mischaracterized the question that Intervenors were attempting to pose.[2]

Further, Interrogatory Nos. 2, 3, 5 and 6 only applied to the extent that Plaintiffs answered Interrogatory Nos. 1 and 4 in the affirmative. Because Plaintiffs denied that they were making the contentions set forth in Interrogatory Nos. 1 and 4, as they understood them, they had no obligation to provide further answers to Interrogatory Nos. 2, 3, 5 and 6. The Court therefore declines to compel Plaintiffs to provide further responses to Interrogatory Nos. 1–6.

    **2.**    **Interrogatory Nos. 7–9**

Intervenors' motion to compel Plaintiffs to provide further responses to Interrogatory Nos. 7–9 is more persuasive. Interrogatory No. 7 reads as follows:

> Do you contend that notwithstanding Article 3 of the Second Amended Exchange Contract which states:
>
>> "Substitute Water Defined. The term 'substitute water' as used herein means all water delivered hereunder at the points of delivery hereinafter specified to the Contracting Entities, regardless of source."
>
> that water delivered by the United States to the Exchange Contractors (Contracting Entities) in 2014 was not "substitute water" as described and defined in that quoted provision of the Second Amended Exchange Contract?

---

[2] The explanation of the Interrogatories that is provided in Intervenors' reply brief only makes their meaning more uncertain. See Intervenors' Reply at 2–3, ECF No. 184 (stating that "Interrogatory Nos. 1 and 4 ask whether, in 2014, the United States misconstrued the underlying water rights of the Exchange Contractors relied upon for the performance of the Exchange Contract and, if so, on what days and from which source or facilities was San Joaquin River water or water from other substitute supplies delivered, either intentionally or in error, by the United States in 2014, even though the Exchange Contract terms did not so require it.").

Plaintiffs' answer to this Interrogatory was unresponsive. They stated that "[u]nder the Second Amended Exchange Contract, 'substitute water' is a contract term designating water provided by Reclamation in exchange for the right to use the Exchange Contractors' reserved rights to flows in the San Joaquin River." In addition, Plaintiffs observe, "[t]he Exchange Contractors are only entitled to this San Joaquin River [water] when substitute water from other sources is not available." Pl.'s Resp. Ex. 1, at 6; see also Pl.'s Resp. at 11–12.

Although not explicitly stated, the Court interprets Plaintiffs' response to this Interrogatory to state that, in their view, any water Reclamation supplied to the Exchange Contractors from the San Joaquin River in 2014 was not "substitute water" to which the Exchange Contractors had a contractual right, because there was water from other sources available to meet Reclamation's obligations to Intervenors.

But despite effectively responding in the affirmative to Interrogatory No. 7, Plaintiffs objected to answering Interrogatory Nos. 8 and 9, which requested that Plaintiffs supply the facts and documents supporting their contention. Plaintiffs objected to these interrogatories on the grounds that they were "burdensome" or "not proportional to the needs of the case." They observed that their position that the water supplied was not "substitute water" was based on the terms of the Second Amended Contract, and that "facts concerning the lengthy history and operation of the contract arrangement are irrelevant—and are better known by the Exchange Contractors than by [Plaintiffs]." Pl.'s Resp. Ex. 1, at 6.

"The use of broad or boilerplate objections is insufficient to justify withholding information" requested in discovery. Kansas City Power & Light Co. v. United States, 139 Fed. Cl. 546, 565 (2018). Further, the Court does not understand the Intervenors to be asking for facts supporting Plaintiffs' interpretation of the term "substitute water" in the Exchange Contract. Instead, the Court understands Intervenors to be asking for facts that support Plaintiffs' contention that the water supplied to the Exchange Contractors did not fit within Plaintiffs' understanding of the term "substitute water." In other words, they request facts and documents supporting the assertion that Reclamation could have supplied the Exchange Contractors with water from some source other than the San Joaquin River. Intervenors' objections to Interrogatory Nos. 8 and 9 are therefore without merit, and Plaintiffs must provide more fulsome responses to those interrogatories.

### 3.   Interrogatory No. 10

Interrogatory No. 10 reads as follows:

> If your "facts" provided in answer to Interrogatory Nos. 7 and/or 8 includes any water stored in Millerton Reservoir or in any other reservoir storing San Joaquin River water for any period of time in 2014 as "a fact" supporting your contention described in your answers to Interrogatory Nos. 7 and/or 8, describe the facts supporting the claim that the rights of the Exchange Contractors to the water entering or released from any reservoir on the San Joaquin River in 2014 were not permitted to be used by the United States as "substitute water" as defined in the Second Amended Exchange Contract (quoted in Interrogatory No. 7 above) to supply the Exchange Contractors in 2014?

5

Pl.'s Resp. Ex. 1, at 7. The Court finds this run-on sentence difficult to decipher. Plaintiffs interpreted the question posed to be "whether water stored in Millerton Lake or an upstream reservoir is substitute water, under the terms of the Second Amended Contract." Id. They then went on to answer the question by repeating that "substitute water is a contract term designating water provided by Reclamation in exchange for the right to use the Exchange Contractors' reserved rights to flows in the San Joaquin River," and that "[t]he Exchange Contractors are only entitled to San Joaquin River water when substitute water from other sources is not available." Id. To the extent that Plaintiffs are asserting that the water drawn from the San Joaquin River and stored in Millerton Lake or an upstream reservoir is not substitute water because water from other sources was available, Plaintiffs were asked to provide the facts supporting that assertion. As with Interrogatory Nos. 8 and 9, they failed to do so. Therefore, the Court directs Plaintiffs to provide a more complete response to Interrogatory No. 10.

### 4. Interrogatory No. 14

Interrogatory No. 14 reads as follows:

Do you contend that because the United States did not order the waters retained in storage by Southern California Edison and/or Pacific Gas & Electric under the terms of the Power Contracts for any period of time, those released waters from upstream reservoirs of Southern California Edison and Pacific Gas & Electric upon entering Millerton Reservoir became exempted from or excused from the requirements of Paragraph 9(a) of the Purchase Contract that the waters of the San Joaquin – whether flowing into Millerton Reservoir instantaneously or stored herein – be delivered downstream to the Exchange Contractors in conditions of shortage?

Pl.'s Resp. Ex. 1, at 9. Plaintiffs objected to this Interrogatory because they found it "unintelligible" and because it allegedly mischaracterized Paragraph 9(a) of the Purchase Contract. Id. The Court agrees that the Interrogatory as written is impenetrable. The explanation of the Interrogatory contained in Intervenors' December 4, 2020 letter to counsel for Plaintiffs is also of no assistance. Intervenors' Mot. to Compel Ex. 2, at 4. The Court will not direct Plaintiffs to provide a further response that signals agreement or disagreement with a contention whose meaning cannot be readily ascertained.

### 5. Interrogatory Nos. 17–19

Interrogatory No. 17 reads as follows:

Do you contend that Paragraph 11(a) of the Purchase Contract which requires that the United States administer and exercise the rights of the Exchange Contractors' Power Contracts after 1939, stating: ". . . provided always, that said rights privileges or benefits shall not at any time be exercised by the United States so as to diminish the water supply of the beneficiaries of Schedule One (1)..." was not, in 2014, a prior condition to the obligation of the United States to deliver water to the Plaintiffs pursuant to their Contract terms with the United States through the provisions of Paragraph 3(N) and/or the requirement of Paragraph 12(b) that the United States meet legal obligations?

6

Pl.'s Resp. Ex. 1, at 10–11. Plaintiffs objected to this Interrogatory on the grounds that it was unintelligible. The Court again agrees and again finds the lengthy attempt on counsel's part in the December 4, 2020 letter to explain what Intervenors were asking even more incomprehensible. Intervenors' Mot. to Compel Ex. 2, at 4. The Court again declines to require Plaintiffs to state whether or not they agree with a contention so complicated that it defies explanation.

### 6. Interrogatory No. 24

Interrogatory No. 24 states as follows:

> Do you contend that any of the Plaintiffs (1) gave notice in writing to the United States of their objection to transfers of CVP water proposed in the 2014 calendar year by the Exchange Contractors to be approved by the United States, and (2) that any of the Plaintiffs met and conferred with the United States and gave written notice of any grounds of objection to approval of transfers by the Exchange Contractors, before commencing any legal action as required by Paragraph 33 of the Plaintiffs' Contracts with the United States?

Pl.'s Resp. Ex. 1, at 13–14. Plaintiffs objected to Interrogatory No. 24 on the grounds that "it mischaracterizes the provision of Article 33 of Friant's contracts, making it impossible to provide a meaningful response." Id. at 14. In addition, they objected to the Interrogatory on the grounds that it requested information not relevant to any claim or issue in the case given "that there is no condition precedent for the filing of Friant's breach-of-contract claims as set forth in Plaintiffs' Second Amended Complaint." Id.

The Court agrees with Plaintiffs that the Interrogatory improperly cites Article 33 of the contract, entitled "Severability," which concerns suits brought by persons or entities that are not parties to the contract. Pl.'s 2d Am. Compl. Ex. 5, at 66–67, ECF No. 128-6. It is Article 34, entitled "Resolution of Disputes," that sets forth the parties' obligations to meet and confer and to provide notice thirty days before filing suit. Id. at 67–68.

In paragraph 44 of their second amended complaint, Plaintiffs assert that prior to filing suit they "participated in an extensive meet and confer process in an attempt to resolve this dispute" and that "[a]t all material times in 2014 Plaintiffs had complied with all requirements of their water-supply contracts." Pl.'s 2d Am. Compl. ¶ 44. The Court takes Plaintiffs' statement that there was no condition-precedent to the filing of their breach of contract claims in this case as a statement that they do not believe that a failure to provide notice or engage in a meet and confer process would be a bar to their suit here. Nonetheless, the Court believes that it is reasonable to expect Plaintiffs to respond to Interrogatory No. 24 with the understanding that the reference to Article 33 was in error, and that the relevant contractual provision is Article 34.

### B. Intervenors' Second Twenty-Five Interrogatories

Intervenors also ask the Court to compel Plaintiffs to respond to Interrogatory Nos. 26–50. Intervenors' Mot. to Compel at 2. Plaintiffs objected to answering these interrogatories on the grounds that RCFC 33 states that "a party may serve on any other party no more than 25

7

written interrogatories, including all discrete subparts." See Pl.'s Resp. at 5. In this case, the Intervenors argue, their group consists of five parties, each entitled to serve twenty-five interrogatories. Therefore, in theory, according to Intervenors, they could have served a total of 125 interrogatories without running afoul of the numerical limitation set forth in RCFC 33.

The Court declines to compel Plaintiffs to respond to Interrogatory Nos. 26−50. The twenty-five interrogatory limit is imposed, in part, to increase the efficiency of the interrogatory practice and to avoid burdening the opposing party with excessive discovery requests. Fed. R. Civ. P. 33(a)(1) (1993 Advisory Committee Notes); see also Capacchione v. Charlotte-Mecklenburg Sch., 182 F.R.D. 486, 492 (W.D.N.C. 1998) (noting that "the limit also serves to force parties to make prudent and constructive use of this discovery device.").[3] "There is a split of opinion," however, "as to whether Rule 33(a)(1) provides each 'party' with authority to serve twenty-five interrogatories on any other party, or whether Rule 33(a)(1) limits each 'side' to twenty-five interrogatories." Compare Atl. Sounding Co. v. Townsend, No. 3:05-CV-649-J-20JRK, 2010 WL 11508296, at *1 (M.D. Fla. Feb. 16, 2010) (citing St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff") with Zito v. Leasecomm Corp., 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (the "more sensible approach" is to impose limitation based on "sides" rather than "parties"); see also David S. Yoo, Rule 33(a)'s Interrogatory Limitation: by Party or by Side?, 75 U. Chi. L. Rev. 911 (2008)).

The Court need not decide in this case whether RCFC 33 limits the number of interrogatories based on party or on side because, in its view, there is no justification for treating the Intervenors as more than one party for purposes of discovery. All five of the parties that make up the group of Exchange Contractor Intervenors requested leave to intervene together in a single motion, are represented by the same counsel, have identical interests, signed on to the same motion to dismiss, and served their interrogatories collectively as a group. Therefore, the Court concludes that the best result in this case is to treat these "nominally separate parties" as "one party for purposes of the 25–interrogatory limitation." Vinton v. Adam Aircraft Industries, Inc., 232 F.R.D. 650, 664 (D. Colo. 2005) (citing 8A Wright, Miller and Marcus, Federal Practice and Procedure, Civil 2d § 2168.1). This is especially appropriate given that Plaintiffs in this case have the burden of responding to discovery from the defendant, the United States, and also potentially from another set of defendant-intervenors (the District Intervenors).

## II. Plaintiffs' Motion to Compel Deposition of Daniel Steiner

As noted above, in addition to Intervenors' motion to compel, the Court also has before it a motion filed by the Plaintiffs seeking to compel the deposition of Daniel Steiner. See Pl.'s Mot. to Compel. According to a declaration by Mr. Steiner that the Exchange Contractors filed in

---

[3] Interpretation of the Rules of the Court of Federal Claims "will be guided by case law and the Advisory Committee Notes that accompany the [Federal Rules of Civil Procedure]." RCFC Rules Committee Note (2002). The interpretation of the Federal Rules "informs the Court's analysis" of the corresponding Rule in the Court of Federal Claims. Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006).

support of their motion to intervene, he "participated with Bureau of Reclamation personnel" in analyzing the hydrology and operation of the San Joaquin River in 2014. Pl.'s Mot. to Compel Ex. 2, Decl. of Daniel Steiner ("Steiner Decl.") ¶ 2; see also Pl.'s Mot. to Compel at 1–2. Mr. Steiner is therefore an important fact witness.

Plaintiffs noticed Mr. Steiner's deposition on November 20, 2020. See Pl.'s Mot. to Compel Ex. 4, ECF No. 189-4. In the email accompanying the deposition notice, Plaintiffs requested that Intervenors provide a date and time that Mr. Steiner would be available. Pl.'s Mot. to Compel Ex. 5, at 1–2, ECF No. 189-5. On January 7, 2021, after receiving no response to that email or two follow-up communications sent in December, Plaintiffs' counsel requested that the parties meet-and-confer to discuss the scheduling of the deposition. Pl.'s Mot. to Compel Ex. 1, at 2, ECF No. 189-1.

Counsel for the Exchange Contractors responded that day. He confirmed that Mr. Steiner was a fact witness in the case because of his involvement in the events and decisions in 2014 that gave rise to this lawsuit. Id. at 1. He further advised Plaintiffs' counsel that Intervenors also intended to rely on Mr. Steiner as an expert witness. Counsel for Plaintiffs agreed to stipulate that she would limit her questions to matters that Mr. Steiner learned as a participant in the events that led up to this lawsuit, and save for the expert discovery portion of the case any questions about the opinions he has formed based on information he obtained since this litigation was initiated. Id.

Because Intervenors' email response of January 7 did not provide the requested date for Mr. Steiner's deposition, on January 8 counsel for Plaintiffs advised counsel for the Intervenors that she intended to file a motion to compel. Pl.'s Mot. to Compel Ex. 7, at 1–2, ECF No. 189-7.

Intervenors' counsel responded the same day, again asking for confirmation that the deposition would be limited to factual issues and expressing concern about whether it might be better to hold off on deposing Mr. Steiner until the expert discovery phase of the case. Id. at 1. Nonetheless, he stated, he would "proceed to get some available dates from Mr. Steiner." Id.

On January 15, because no date had yet been supplied for Mr. Steiner's deposition, Plaintiffs filed the motion to compel that is currently before the Court. The Intervenors responded to the motion to compel on January 22, 2021. ECF No. 190. They contend that the motion to compel "is a meritless attempt to distract the Court from the Defendant-Intervenors' Motion to Compel Further Responses to Special Interrogatories." Id. at 2. Further, they argue that the Court "should deny the Motion as moot or, alternatively, enter an order authorizing the deposition so long as Plaintiffs refrain from asking questions that infringe on Mr. Steiner's expert knowledge, opinion, or judgments." Id.

The Court is not sure why Intervenors would think that the Court might be "distracted" from deciding their motion to compel by the Plaintiffs filing a motion of their own. And in any event, another two weeks has passed since Plaintiffs filed their Motion to Compel and—so far as the Court knows—Intervenors have apparently still not proposed dates for Mr. Steiner's deposition. The motion to compel is therefore not moot.

Therefore, the Court directs Intervenors to provide counsel for Plaintiffs with several proposed dates for a deposition of Mr. Steiner to take place within fourteen days of the date of this Order. During that deposition, Mr. Steiner may be required to answer questions regarding the services he provided to the Intervenors in 2014 during the drought, including questions about his interactions with the United States and other parties to this litigation. The parties are directed to <u>Emerson Elec. Co. v. Suzhou Cleva Elec.</u>, No. 4:13-CV-01043 SPM, 2014 WL 5529152 (E.D. Mo. Nov. 3, 2014), for guidance regarding the appropriate scope of Mr. Steiner's deposition.

The Court urges the parties to do their best to resolve any disputes that may arise about the scope of the deposition on their own, and without the need for intervention by the Court.

## CONCLUSION

In view of the foregoing, Intervenors' Motion to Compel, ECF No. 182, is **GRANTED-IN-PART**. Plaintiffs shall respond to Interrogatory Nos. 8, 9, 10, and 24 within thirty days, consistent with the Court's opinion. Intervenors' Motion to Compel is otherwise **DENIED**.

Plaintiffs' Motion to Compel Defendant-Intervenors to Produce Daniel Steiner for Deposition under Rule 30(b)(1), ECF No. 189, is **GRANTED**. Intervenors are directed to provide Plaintiffs' counsel with several proposed dates for a deposition of Mr. Steiner to take place within fourteen days of the date of this Order, unless the parties mutually agree otherwise.

Finally, upon consideration of the parties' joint status report filed on January 12, 2021, ECF No. 187, the Court sets the following revised schedule for the completion of discovery in this case, as proposed by the government:

| Date | Event |
|---|---|
| **April 15, 2021** | Fact discovery shall be completed. |
| **May 14, 2021** | Expert disclosures shall be exchanged. |
| **June 14, 2021** | All discovery shall close. |
| **June 28, 2021** | The parties shall file a joint post-discovery status report. |

The government shall cooperate with Plaintiffs in setting dates for depositions, so that no further extensions of the discovery schedule will be required.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

11